## ESCROW AGREEMENT

ESCROW AGREEMENT entered into this ___15th___ day of __June__
__2004__ , among __David A. Jordan__
(herein "Surety"), Michael J. Sullivan, in his official capacity as
United States Attorney for the District of Massachusetts (herein
"United States Attorney"), and Tony Anastas, in his official capacity
as Clerk of the United States District Court for the District of
Massachusetts (herein "Escrow Agent").

WHEREAS the Surety is desirous of effecting the release of
__David Jordan a.k.a David A. Jordan__ (herein "Defendant") in
Criminal No. __MJ-2004-M-221JLA__ , on the terms and
conditions of bail set forth in an Order Setting Conditions of
Release (herein "Bail Order") dated __June 10, 2004__ , and
entered by the Honorable __Joyce Alexander__ , United
States District Judge/Magistrate Judge, and has agreed to execute a
personal bond in the amount of __Five Hundred Thousand__
_____ ($ 500,000.00 ) Dollars (herein "Personal
Bond") to secure the Defendant's compliance with the terms and
conditions of the Bail Order.

NOW THEREFORE, in consideration of the mutual covenants and
agreements contained herein, the parties hereto agree as follows:
1. The Surety shall execute a quitclaim deed to the parcel of real
property located at __123 Spring Street, Stoneham, MA 02180__
_____ in favor of the United States of America, and
deliver said deed to the Escrow Agent to be held in escrow pursuant
to the terms of this Agreement.

2. The Surety further agrees to execute any additional documents and
take any action necessary to effectuate the transfer of said parcel
of real property and facilitate the sale of such property in the
event that the Defendant is in default of the terms and conditions of
the Bail Order or Personal Bond.

3. The Escrow Agent shall hold the quitclaim deed in escrow under
the following terms and conditions:

   A. In the event that the Defendant fails to appear as required
at all proceedings in Criminal No. __MJ-2004-M-221JLA__ or otherwise
violates any condition of bail, and Defendant is declared to be in
default by a judicial officer of the United States District Court for
the District of Massachusetts, then, upon order of the Court, and in
lieu of or in addition to foreclosure proceedings on any mortgage
granted by the Surety, the Escrow Agent shall tender the quitclaim
deed to the United States Attorney, and he shall cause the same to be
immediately recorded without notice to the Surety. Any requirement
that foreclosure proceedings be commenced upon any mortgage granted
by the Surety in connection with Criminal No. __MJ-2004-M-221JLA__
is expressly waived by the Surety.

B.   This Agreement shall terminate upon the final disposition of Criminal No. MJ-2004-M-221JLA          and written discharge of the bond provided to the Surety by the United States of America. Upon such termination, and upon order of the Court, the Escrow Agent shall deliver the quitclaim deed to the Surety.

5.   The validity and construction of this Agreement shall be governed by the law of the Commonwealth of Massachusetts.

6.   This Escrow Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns and personal representatives.

IN WITNESS WHEREOF, the parties here have caused this Agreement to be executed as of the date first written above.

ESCROW AGENT:                          SURETY:

TONY ANASTAS, CLERK OF COURT

By: _____
        Deputy Clerk

MICHAEL J. SULLIVAN,
UNITED STATES ATTORNEY

By: _____
        Asst. U.S. Attorney


COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                    _____


Then personally appeared _____
_____ and acknowledged the foregoing to
be _____ free act and deed before me.

                          _____
                          NOTARY PUBLIC

          My Commission Expires:   _____


(ESCROW FORM.wpd - 1/17/2002)

**Commonwealth of Massachusetts**

**Norfolk, ss**                                                                                       **June 15, 2004**

On this 15th day of June 2004, before me, the undersigned notary public, personally appeared David A. Jordan and proved to me through satisfactory evidence of identification and personally known to the undersigned, to be the person whose name is signed on the preceding document and acknowledged to me he signed it voluntarily for its stated purpose as aforesaid.

Notary Public _Lynn Dolan_
My commission expires:
12/22/06

## QUITCLAIM DEED

**David A. Jordan of Stoneham, Massachusetts**

For consideration paid in the amount of One Dollar and 00/100 **($1.00)**

**Grant to UNITED STATES OF AMERICA**

*With quitclaim covenants*

The land with the buildings thereon situated in Stoneham, Middlesex County, Massachusetts, and being shown as Lot 8 on a plan entitled "Subdivision Plan of Raynor Circle, Stoneham, Mass., May 5, 1971, Drawn from Symes Associates, Inc., Otte and Dwyer, Inc. Surveyors" duly recorded with Middlesex South District Registry of deeds at the end of Book 12001, and being further  described as follows:

EASTERLY        by Spring Street, 97.86 feet as shown on said plan;

SOUTHERLY       by land now or formerly of Regan, as shown on said plan, 113.31 feet;

WESTERLY        by Lot 6, as shown on said plan, 80.70 feet; and

NORTHERLY       by Lot 7, as shown on said plan, 112.0 feet.

Containing 10,000 square feet of land, more or less according to said plan.

For grantor's title see deed recorded at Middlesex South District Registry of Deeds at Book 27080 Page 352.

**Locus: 123 Spring Street, Stoneham, MA 02180**

Witness our hand and seal this / day of June 2004.

Witness

David A. Jordan

**Commonwealth of Massachusetts**

Middlesex, ss                                                     June _____ 2004

  Then personally appeared before me the above named David A. Jordan and acknowledged the foregoing to be his free act and deed as aforesaid.

             _____
             **Notary Public**
             **My commission expires:**

**Commonwealth of Massachusetts**

**Norfolk, ss**                                                                 **June 15, 2004**

On this 15th day of June 2004, before me, the undersigned notary public, personally appeared David A. Jordan and proved to me through satisfactory evidence of identification and personally known to the undersigned, to be the person whose name is signed on the preceding document and acknowledged to me he signed it voluntarily for its stated purpose as aforesaid.

Notary Public
My commission expires:

## Certification of Title

MORTGAGEE:  Clerk of the United States District Court for the District of Massachusetts

MORTGAGOR:  David A. Jordan

PROPERTY :  123 Spring Street, Stoneham, MA 02180

AMOUNT OF MORTGAGE:  Five Hundred Thousand Dollars  ($500,000.00)

CONSIDERATION:

DATE OF RECORDING:  June 16, 2004

We hereby certify that the title to the above property has been examined in the appropriate Registry of Deeds, and that at the time of recording of the mortgage from the Mortgagor to the Mortgagee described above, the Mortgagor held a good and sufficient record title to the above Property, free from all encumbrances, excepting only matters which are expressly enumerated therein and in the Schedule attached hereto which is incorporated into and made part of this certification.

We further certify that the Mortgagee holds a good and sufficient record first mortgage to the above Property subject only to the matters excepted by this certification and said Schedule.

This Certification is given in accordance with the Massachusetts General Laws, Chapter 93, Section 70 as revised by Chapter 448 of the Acts of 1980 and shall be limited as to the Mortgagor, to the amount of the consideration shown on the deed and for only as long as said Mortgagor has title to the mortgaged premises, and shall be limited as to the Mortgagee, to the original principal amount secured by the mortgage and for only so long as the original debt secured by the mortgage remains unpaid.

The undersigned shall not be liable to the mortgagor pursuant to this certificate unless said loan is secured by a purchase money mortgage on real estate improved with a dwelling designed to be occupied by not more than four families and occupied or to be occupied in whole or in part by the mortgagor.

This certification does not cover any possible defects, encumbrances or adverse claims resulting from any factual inaccuracy or the lack of authenticity of any of the instruments and documents appearing in the public records which were examined on or account of any inaccuracy, error or omission in the indices of such public records, as we are not responsible for determining and have not determined the accuracy and authenticity of such matters.

Neither the Mortgagee nor counsel for the Mortgagee have made any detailed inspection of the Property and do not warrant or make any representations respecting the condition or fitness of any part thereof.

Cushing & Dolan, P.C.

By:

SEE SCHEDULE ON NEXT PAGE

MA091(9705)    PROFESSIONAL DOCUMENT SYSTEMS INC. - (603) 437-1541

## SCHEDULE

1. Real Estate taxes, betterment and other municipal assessments, sewer and water charges which are lien against the property.

   Information provided by the Town/City of ___Stoneham___

   indicated that the real estate bill due ___May 01, 2004___ has been paid.

2. Zoning, building, health, safety and sanitation laws and regulations of the Town or City in which the Property is located, and laws and regulations of the Commonwealth of Massachusetts, including the so-called "Lead Paint" law, drainage and utility easements, if any.

3. Applicable environmental and land use restrictions, controls and regulations, if any, liens arising out of the provisions of the Mass Hazardous Waste Statue, M.G.L. Chapter Ch. 21E.

4. Defects, liens, encumbrances, easements, adverse claims or other matters affecting the title which either have not been recorded with the appropriate Registry of Deeds or Registry of Probate or are not required to be so recorded to affect the title. Bankruptcies, except as it may appear of record as above referred to.

5. Such facts as may be revealed by a personal inspection or accurate survey of the property.

6. Rights of Tenants, lessees or occupants.

7. Subject to a mortgage to MERS as nominee for Homecomings Financial Network dated March 4, 2002 and recorded with Middlesex South District Registry of Deeds in Book 35028, Page 522.

8. Subject to a second mortgage to Malden City Employees Credit Union dated February 18, 2003 and recorded with said Registry in Book 38200, Page 56.

5
COPY

**MORTGAGE**



2004 00154784
Bk: 43086 Pg: 112    Doc: MTG
Page: 1 of 5    06/18/2004 01:12 PM

THIS MORTGAGE is made this ___15th___ day of June _____,
20_04_, between __David A. Jordan a.k.a. David Jordan_____
presently residing at _123 Spring Street, Stoneham, MA 02180_
(herein "Mortgagor(s)"), and the Clerk of the United States
District Court for the District of Massachusetts, United States
Courthouse, 1 Courthouse Way, Boston, Massachusetts (herein
"Mortgagee").

WITNESSETH, for consideration paid and to secure a personal bond
of even date for __David Jordan__ _a.k.a. David A. Jordan_ (herein
"Defendant"), in Criminal No. _MJ-2004-M-221JLA_ before the United
States District Court for the District of Massachusetts (herein
"Court"), in the amount of __Five Hundred Thousand_____
($_500,000.00_____) Dollars executed by the Defendant and the
Mortgagor(s) in favor of the United States of America, and to
secure due observance and performance of the obligation, terms,
and conditions as set forth in an Order Setting Conditions of
Release dated ___June 10_____, 20_04_, and filed with the
Court, and to further secure the performance of all other
covenants and agreements of or by the Defendant and Mortgagor(s)
herein for the benefit of the Mortgagee, which may now exist or
may hereafter exist or accrue while this Mortgage is still
undischarged of record, and in furtherance of and pursuant to an
escrow agreement made this day between the Mortgagor(s), the
United States Attorney for the District of Massachusetts and the
Mortgagee, the Mortgagor(s) hereby mortgage, with power of sale,
the following parcel of real property, with the following
covenants thereon, situate, lying and being in the County of
__Middlesex_____, Commonwealth of Massachusetts,
and more particularly described in the following deed:

    A deed from _Robert W. Harris and Donna B. Harris_____
    to __David A. Jordan_____
    dated _February 21, 1997_, ~~XX~~___, and recorded in the
    _Southern Middlesex_____ County Registry of Deeds at
    Book _27080_, Page _352____;

TOGETHER with all the improvements now or hereafter erected on
the property, and all easements, rights, appurtenances, rents
royalties, mineral, oil and gas rights and profits, water, water
rights, and water stock, and all fixtures now or hereafter
attached to the property, all of which, including replacements
and additions thereto, shall be deemed to be and remain a part of
the property covered by this Mortgage; and all of the foregoing,
together with said property are hereinafter referred to as the
"Property."

Return to:
Cushing+John P.C.
47 Pleasant St
Woburn MA 01801

-2-

THE MORTGAGOR(S) covenant with the Mortgagee as follows:

1.   That the Mortgagor(s) shall pay the indebtedness as hereinbefore provided.

2.   That the Mortgagor(s) will keep the Property insured against loss by fire or hazards included within the term "extended coverage" for the benefit of the Mortgagee; that the Mortgagor(s) will assign and deliver the policies to the Mortgagee; and that the Mortgagor(s) will reimburse the Mortgagee for any premiums paid or insurance made by the Mortgagee on the Mortgagor(s)'s default in so insuring the Property or in so assigning and delivering the policies. However, the Mortgagee shall never be required to maintain insurance of any type or description on the Property.

3.   That the Mortgagor(s) shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property, and no building on the Property shall be removed or demolished without the consent of the Mortgagee.

4.   That the Mortgagor(s) will pay all taxes, assessments or water rates, and in default thereof, the Mortgagee may, but is not required to, pay the same. In the event that the Mortgagee elects not to pay the same, the Mortgagee is not required to so notify the Mortgagor(s).

5.   That the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, said proceeds not to exceed the dollar amount of the personal bond secured by this Mortgage, shall be delivered to the Mortgagee, who shall hold such proceeds in a non-interest bearing escrow account until either (A) the personal bond has been discharged by the Court, whereupon, and only upon an order of the Court, the Mortgagee shall deliver said proceeds to the Mortgagor(s), or (2) the Defendant fails to observe the Order Setting Conditions of Release and is defaulted by a judicial officer of the Court, whereupon the proceeds shall be disbursed for the benefit of the United States of America in accordance with, and only upon, an order of the Court.

6.   That notice and demand or request may be made in writing and may be served in person or by mail.

7.   That the Mortgagor(s) will warrant and defend the title to the Property against all claims and demands.

8.   That the Mortgagor(s) will create no further encumbrances of any kind against the Property.

9.   That the Mortgagor(s), in case a sale shall be made under the power of sale, will, upon request, execute, acknowledge and deliver to the purchaser or purchasers a deed or deeds of release confirming such sale, and that the Mortgagee is appointed and

-3-

constituted the attorney irrevocable of the Mortgagor(s) to execute and deliver to said purchaser a full transfer of all policies of insurance on the Property at the time of such sale.

10.   That the holder of this Mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

11.   Notwithstanding any other agreement between the Mortgagor(s) and Mortgagee, or any provision of law, the Mortgagee shall not be required to discharge this Mortgage except upon order of the Court. It shall be the obligation of the Mortgagor(s) to furnish the Mortgagee with a certified copy of said order.

IN WITNESS WHEREOF, this Mortgage has been duly executed by the Mortgagor(s).



COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                              On _____

Then personally appeared _____
and acknowledged the foregoing to be _____ free act and deed
before me.

                              NOTARY PUBLIC

                              My Commission Expires: _____

(MORTGAGE FORM.wpd - 05/2001)

## Commonwealth of Massachusetts

**Norfolk, ss**                                                            **June 15, 2004**

On this 15th day of June 2004, before me, the undersigned notary public, personally appeared David A. Jordan and proved to me through satisfactory evidence of identification and personally known to the undersigned, to be the person whose name is signed on the preceding document and acknowledged to me he signed it voluntarily for its stated purpose as aforesaid.

Notary Public _____

My commission expires: 12/22/06

## EXHIBIT A

The land with the buildings thereon situated in Stoneham, Middlesex County, Massachusetts, and being shown as Lot 8 on a plan entitled "Subdivision Plan of Raynor Circle, Stoneham, Mass., May 5, 1971, Drawn from Symes Associates, Inc., Otte and Dwyer, Inc. Surveyors" duly recorded with Middlesex South District Registry of deeds at the end of Book 12001, and being further described as follows:

| | |
|---|---|
| EASTERLY | by Spring Street, 97.86 feet as shown on said plan; |
| SOUTHERLY | by land now or formerly of Regan, as shown on said plan, 113.31 feet; |
| WESTERLY | by Lot 6, as shown on said plan, 80.70 feet; and |
| NORTHERLY | by Lot 7, as shown on said plan, 112.0 feet. |

Containing 10,000 square feet of land, more or less according to said plan.

Locus: 123 Spring Street, Stoneham, USA

```
*---------------------------------------------*
Official Receipt for Recording in:

         Middlesex South Registry of Deeds
         208 Cambridge St.

         Cambridge, Massachusetts 02141

Issued To:
         WALK IN


               Recording Fees
*-------------------------------------------*
Document                            Recording
Description   Number    Book/Page    Amount
*-------------------------------------------*
MTG          00154783  43066   107   $175.00
CERTCPY    30 Bishop Rd Malden       $5.00
MTG          00154784  43066   112   $175.00
CERTCPY      113 Spring St           $5.00
             Stoneham             ----------
                                     $360.00
               Collected Amounts
*-------------------------------------------*
Payment
Type                                 Amount
*-------------------------------------------*
Check              10149             $360.00
                                  ----------
                                     $360.00


         Total Received  :           $360.00
   Less Total Recordings:            $360.00
                                  ----------
         Change Due      :            $.00


               Thank You
   EUGENE C. BRUNE - Register of Deeds

      By: Jennifer U


         Receipt#   Date     Time
         0159341  06/16/2004 01:12p
```

# FannieMae
## Desktop Underwriter Quantitative Analysis Appraisal Report   File No.

**THIS DESKTOP APPRAISAL REPORT IS INTENDED FOR USE BY THE LENDER/CLIENT FOR A MORTGAGE FINANCE TRANSACTION ONLY.**

**SUBJECT**

Property Address 123 SPRING STREET   City STONEHAM   State MA.   Zip Code 02180-1464
Legal Description BOOK 27080 PAGE 352   County MIDDLESEX
Assessor's Parcel No. 2-135   Tax Year 2004   R.E. Taxes $ 3,700.00   Special Assessments $ N/A
Borrower N/A   Current Owner DAVID JORDAN   Occupant ☒ Owner ☐ Tenant ☐ Vacant
Neighborhood or Project Name N/A   Project Type ☐ PUD ☐ Condominium   HOA $   N/A /Mo.
Sales Price $ N/A   Date of Sale N/A   Description / $ amount of loan charges/concessions to be paid by seller N/A
Property rights appraised ☒ Fee Simple ☐ Leasehold   Map Reference 1120   Census Tract 3371.02

Note: Race and the racial composition of the neighborhood are not appraisal factors.

**NEIGHBORHOOD**

| | | | | | | | Single family housing | | Condominium housing | |
|---|---|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban | ☒ Suburban | ☐ Rural | Property values | ☐ Increasing | ☒ Stable ☐ Declining | PRICE $(000) | AGE (yrs) | PRICE (if applic.) $(000) | AGE (yrs) |
| Built up | ☒ Over 75% | ☐ 25-75% | ☐ Under 25% | Demand/supply | ☐ Shortage | ☒ In balance ☐ Over supply | 400 Low | 1 | Low | |
| Growth rate | ☐ Rapid | ☒ Stable | ☐ Slow | Marketing time | ☐ Under 3 mos. | ☒ 3-6 mos. ☐ Over 6 mos. | 800 High | 100 | High | |

Neighborhood boundaries THE SUBJECT NEIGHBORHOOD IS BOUND ON THE NORTH BY ELM STREET,
ON THE EAST BY THE MELROSE LINE, ON THE SOUTH BY FRANKLIN STREET AND ON THE WEST   Predominant 550   Predominant 30
BY SUMMER STREET.

**SITE**

Dimensions 97.86' X 113.31' X 80.70' X 112'   Site area 10,000 SF   Shape QUADRILATERAL
Specific zoning classification and description RESIDENCE A SINGLE FAMILY MINIMUM 10,000 SF
Zoning compliance ☒ Legal ☐ Legal nonconforming (Grandfathered use) ☐ Illegal, attach description ☐ No zoning
Highest and best use of subject property as improved (or as proposed per plans and specifications): ☒ Present use ☐ Other use, attach description.

| Utilities | Public | Other | | Public | Other | Off-site Improvements | Type | Public | Private |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street | ASPHALT PAVED | ☒ | |
| Gas | ☐ | | Sanitary sewer | ☒ | | Alley | NONE | | |

Are there any apparent adverse site conditions (easements, encroachments, special assessments, slide areas, etc.)? ☐ Yes ☒ No If Yes, attach description.

**IMPROVEMENTS**

Source(s) used for physical characteristics of property: ☒ Interior and exterior inspection ☐ Exterior inspection from street ☐ Previous appraisal files
☐ MLS ☒ Assessment and tax records ☐ Prior inspection ☐ Property owner ☐ Other (Describe): B&T
No. of Stories 1.75   Type (Det./Att.) DET.   Exterior Walls VINYL   Roof Surface ASPHALT   Manufactured Housing ☐ Yes ☒ No
Does the property generally conform to the neighborhood in terms of style, condition and construction materials? ☒ Yes ☐ No If No, attach description.
Are there any apparent physical deficiencies or conditions that would affect the soundness or structural integrity of the improvements or the livability of the property?
☐ Yes ☒ No If Yes, attach description.
Are there any apparent adverse environmental conditions (hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of
the subject property? ☐ Yes ☒ No If Yes, attach description.

**QUANTITATIVE SALES COMPARISON ANALYSIS**

I researched the subject market area for comparable listings and sales that are the most similar and proximate to the subject property.
My research revealed a total of ____5____ sales ranging in sales price from $ 457,500 to $ 530,000 .
My research revealed a total of ____5____ listings ranging in list price from $ 459,000 to $ 539,000 .
The analysis of the comparable sales below reflects market reaction to significant variations between the sales and the subject property.

| FEATURE | SUBJECT | SALE 1 | +(−)$ Adjust. | SALE 2 | +(−)$ Adjust. | SALE 3 | +(−)$ Adjust. |
|---|---|---|---|---|---|---|---|
| Address | 123 SPRING STREET STONEHAM | 8 HALL ROAD STONEHAM, MA. | | 4 GREG ROAD STONEHAM, MA. | | 148 ELM STREET STONEHAM, MA. | |
| Proximity to Subject | | 0.27 miles | | 0.24 miles | | 0.72 miles | |
| Sales Price | $ N/A | $ 457,500 | | $ 488,000 | | $ 495,000 | |
| Price/Gross Living Area | $ / | $ 274.61 / | | $ 259.30 / | | $ 245.78 / | |
| Data & Verification Sources | | MLS/B&T | | MLS/B&T | | MLS/B&T | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Sales or Financing Concessions | | NONE KNOWN | | NONE KNOWN | | NONE KNOWN | |
| Date of Sale/Time | | 2/6/2004 | | 8/15/2003 | | 8/28/2003 | |
| Location | AVERAGE | SIMILAR | | SIMILAR | | SIMILAR | |
| Site | 10,000 SF | 11,761SF | | 13,939 SF | | 12,632 SF | |
| View | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Design (Style) | CAPE/COL. | COLONIAL | | COLONIAL | | COLONIAL | |
| Actual Age (Yrs.) | 33 YEARS | 33 YEARS | | 26 YEARS | | 18 YEARS | |
| Condition | GOOD | INFERIOR 5% | +22,875 | SIMILAR | | SIMILAR | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 6   4   2.0 | 7   4   1.5 | +2,000 | 8   4   2.5 | | 8   4   2.5 | |
| Gross Living Area | 1,679 Sq. Ft. | 1,666 Sq. Ft. | +520 | 1,882 Sq. Ft. | -8,120 | 2,014 Sq. Ft. | -13,400 |
| Basement & Finished | FULL/1/2 BATH | FULL/NONE | +4,000 | FULL/NONE | +4,000 | FULL/NONE | +4,000 |
| Rooms Below Grade | FAMILY ROOM | NONE | +5,000 | NONE | +5,000 | NONE | +5,000 |
| Garage/Carport | 1 CAR UNDER | 2 CAR DET. | -8,000 | 1 CAR ATT. | -3,000 | 2 CAR ATT. | -8,000 |
| PORCH/DECKS | WOOD DECK | WOOD DECK | | SCREEN PORCH | -2,000 | WOOD DECK | |
| POOL/PATIO | I/G POOL/PATIO | NONE | +8,000 | NONE | +8,000 | NONE | +8,000 |
| Net Adj. (total) | | ☒ + ☐ − $ 34,395 | | ☒ + ☐ − $ 3,880 | | ☐ + ☒ − $ 4,400 | |
| Adjusted Sales Price of Comparables | | Net 7.5 % Gross 11.0 % $ 491,895 | | Net 0.8 % Gross 6.2 % $ 491,880 | | Net 0.9 % Gross 7.8 % $ 490,600 | |
| Date of Prior Sale | NONE IN 1 YR. | NONE IN 1 YEAR | | NONE IN 1 YEAR | | NONE IN 1 YEAR | |

# Desktop Underwriter Quantitative Analysis Appraisal Report

**File No.**

**Project Information for PUDs** (if applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)?  [ ] Yes  [ ] No

Provide the following information for PUDs only if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit:

Total number of phases _____ Total number of units _____ Total number of units sold _____

Total number of units rented _____ Total number of units for sale _____ Data Source(s) _____

Was the project created by the conversion of existing buildings into a PUD?  [ ] Yes  [ ] No    If yes, date of conversion: _____

Does the project contain any multi-dwelling units?  [ ] Yes  [ ] No    Data Source: _____

Are the common elements completed?  [ ] Yes  [ ] No    If No, describe status of completion: _____

Are any common elements leased to or by the Home Owners' Association?  [ ] Yes  [ ] No    If yes, attach addendum describing rental terms and options.

Describe common elements and recreational facilities: _____

**Project Information for Condominiums** (If applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)?  [ ] Yes  [ ] No

Provide the following information for all Condominium Projects:

Total number of phases _____ Total number of units _____ Total number of units sold _____

Total number of units for sale _____ Data Source(s) _____

Was the project created by the conversion of existing buildings into a condominium?  [ ] Yes  No    If yes, date of conversion: _____

Project Type:  [ ] Primary Residence  [ ] Second Home or Recreational  [ ] Row or Townhouse  [ ] Garden  [ ] Midrise  [ ] Highrise  [ ] _____

Condition of the project, quality of construction, unit mix, etc.: _____

Are the common elements completed?  [ ] Yes  [ ] No    If No, describe status of completion: _____

Are any common elements leased to or by the Home Owners' Association?  [ ] Yes  [ ] No    If yes, attach addendum describing rental terms and options.

Describe common elements and recreational facilities: _____

**PURPOSE OF APPRAISAL:** The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report based on a quantitative sales comparison analysis for use in a mortgage finance transaction.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

* Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided any required sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

4. The appraiser has noted in the appraisal report any adverse conditions (such as, but not limited to, needed repairs, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, expressed or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

# Desktop Underwriter Quantitative Analysis Appraisal Report          File No.

**APPRAISER'S CERTIFICATION:**     The Appraiser certifies and agrees that:

1.     I performed this appraisal by (1) personally inspecting from the street the subject property and neighborhood and each of the comparable sales (unless I have otherwise indicated in this report that I also inspected the interior of the subject property); (2) collecting, confirming, and analyzing data from reliable public and/or private sources; and (3) reporting the results of my inspection and analysis in this summary appraisal report. I further certify that I have adequate information about the physical characteristics of the subject property and the comparable sales to develop this appraisal.

2.     I have researched and analyzed the comparable sales and offerings/listings in the subject market area and have reported the comparable sales in this report that are the best available for the subject property.     I further certify that adequate comparable market data exists in the general market area to develop a reliable sales comparison analysis for the subject property.

3.     I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report.     I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware, have considered these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them, and have commented about the effect of the adverse conditions on the marketability of the subject property. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

4.     I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

5.     I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction.     I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

6.     I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

7.     I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal.     I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

8.     I estimated the market value of the real property that is the subject of this report based on the sales comparison approach to value.     I further certify that I considered the cost and income approaches to value, but, through mutual agreement with the client, did not develop them, unless I have noted otherwise in this report.

9.     I performed this appraisal as a limited appraisal, subject to the Departure Provision of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of the appraisal (unless I have otherwise indicated in this report that the appraisal is a complete appraisal, in which case, the Departure Provision does not apply).

10.     I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value. The exposure time associated with the estimate of market value for the subject property is consistent with the marketing time noted in the Neighborhood section of this report.     The marketing period concluded for the subject property at the estimated market value is also consistent with the marketing time noted in the Neighborhood section.

11.     I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report.     I further certify that no one provided significant professional assistance to me in the development of this appraisal.

**SUPERVISORY APPRAISER'S CERTIFICATION:**     If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have examined the appraisal report for compliance with the Uniform Standards of Professional Appraisal Practice, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 5 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): |
|---|---|
| Signature: *[signature]* | Signature: *[signature]* |
| Name:   JOSEPH L. ANNELLO | Name:   ROBERT DONNELLY |
| Company Name:   DONNELLY & ASSOCIATES | Company Name:   DONNELLY & ASSOCIATES |
| Company Address:    40 GOLDCLIFF ROAD | Company Address:     40 GOLDCLIFF ROAD |
|                       MALDEN MA. 02148 |                        MALDEN MA. 02148 |
| Date of Report/Signature: 5/27/2004 | Date of Report/Signature: 5/27/2004 |
| State Certification #: | State Certification #:     3896 |
| or State License #:    5106 | or State License #: |
| State:  MA | State:   MA |
| Expiration Date of Certification or License:    1/7/2002 | Expiration Date of Certification or License:   12/24/2003 |

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 123 SPRING STREET | | | | |
| City STONEHAM | | County MIDDLESEX | | State MA. | Zip Code 02180-1464 |
| Lender DAVID JORDAN | | | | | |



## Subject Front

123 SPRING STREET

| Sales Price | N/A |
|---|---|
| GLA | 1,679 |
| Total Rooms | 6 |
| Total Bedrms | 4 |
| Total Bathrms | 2.0 |
| Location | AVERAGE |
| View | AVERAGE |
| Site | 10,000 SF |
| Quality | |
| Age | 33 YEARS |



## Subject Rear



## Subject Street

**DEFINITION OF MARKET VALUE:**   The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus.   Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

> \* Adjustments to the comparables must be made for special or creative financing or sales concessions.   No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions.   Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction.   Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**    The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1.   The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it.   The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title.   The property is appraised on the basis of it being under responsible ownership.

2.   The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3.   The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area.   Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.   The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5.   The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6.   The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal.   Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent  conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.    Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7.   The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct.   The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8.   The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9.   The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

**APPRAISER'S CERTIFICATION:**    The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation.  If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report.  I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report.  I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**    If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**    123 SPRING STREET, STONEHAM, MA. 02180-1464

| **APPRAISER:** | **SUPERVISORY APPRAISER (only if required):** |
|---|---|
| Signature: | Signature: |
| Name:  JOSEPH L. ANNELLO | Name:  ROBERT DONNELLY |
| Date Signed:  5/27/2004 | Date Signed:  5/27/2004 |
| State Certification #: | State Certification #:  3806 |

Borrower/Client   N/A
Property Address   123 SPRING STREET
City   STONEHAM     County   MIDDLESEX     State   MA     Zip Code   02180-1464
Lender   DAVID JORDAN



2ND FLOOR

1ST FLOOR

**Location Map**

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 123 SPRING STREET | | | | | |
| City | STONEHAM | County | MIDDLESEX | State | MA | Zip Code 02180-1464 |
| Lender | DAVID JORDAN | | | | | |

